GailAnn Y. Stargardter (Bar No. 250749)
    gstargardter@lslawoffices.com
LEHAVI STARGARDTER, LLP
P.O. Box 5973
Orange, CA 92863
Telephone: 949.570.9575
Facsimile: 949.570.9580

Attorneys for Plaintiff Certain Underwriters
at Lloyd's, London

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Plaintiff,

v.

COLUMBIA CASUALTY COMPANY; ADMIRAL INSURANCE COMPANY,

Defendants.

CASE NO. **'23 CV 2157 AJB DDL**

**COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION**

COME NOW Certain Underwriters at Lloyd's, London ("Underwriters"), and for their Complaint for Declaratory Relief and Equitable Contribution against Columbia Casualty Insurance Company ("Columbia") and Admiral Insurance Company ("Admiral"), allege as follows:

### NATURE OF THE CASE

1.     This is a dispute between insurers over their obligations to a mutual insured, Sharp Healthcare ("Sharp"). In this Action, Underwriters seek a judicial determination that, under the particular facts presented in this case and the pertinent policy language, the policies issued by Underwriters and Columbia provides primary coverage for the claims asserted against Sharp in the numerous lawsuits filed against it arising out of the same occurrence and that Columbia must share equally in the defense and

indemnification of the claims asserted against Sharp as a co-primary insurer.

2.      Underwriters also seek a judicial determination that the excess policy issued to Sharp by Admiral contributes, equally, with the first layer excess policy issued by them and must exhaust before the two additional layers of excess coverage afforded by policies issued by Underwriters are triggered. To date, Underwriters have paid $5,230,349.84 in defense fees and costs and have funded multiple settlements. Additionally, Underwriters will also be called upon to fund additional settlements on remaining claims.

## JURISDICTION AND VENUE

3.      Jurisdiction is founded upon Title 28 United States Code section 1332, as there is complete diversity of citizenship between Plaintiff and Defendants in this action and as the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction over the case under the Declaratory Judgment Act, 28 U.S.C. section 2201.

4.      Venue is proper in the Southern District of California pursuant to Title 28, U.S.C. section 1391(b)(1) and (c)(2), in that the policies were issued to Sharp in San Diego, County, California, and the acts giving rise to the lawsuits against Sharp arose in San Diego, California.

## PARTIES

5.      Plaintiff Underwriters are an unincorporated association comprised of Syndicates who issued primary and excess policies to Sharp.

6.      Policy No. B0146CYUSA1500542—Cyber Liability Primary Policy effective July 1, 2015-2016 is underwritten by the following Syndicates:

- S4444—Canopius, which has a 32 % interest of the $10,000,000 $10,000,000 aggregate policy limit of Policy No. B0146CYUSA1500542— Cyber Liability Primary Policy effective July 1, 2015-2016. S444 is composed entirely of members that are citizens of England & Wales.

- S958—Canopius, which has an 8% interest of the $10,000,000 aggregate

policy limit of Policy No. B0146CYUSA1500542—Cyber Liability Primary Policy effective July 1, 2015-2016. S958 is comprised of 1509 members, 19 of whom are citizens of the United States and reside in the States of Florida, New York, Pennsylvania, Montana, California, Michigan, Massachusetts, Maryland, Georgia, Arizona and Ohio, and the remainder of which are citizens of England & Wales, United Kingdom, Republic of Ireland, Scotland, New Zealand, Australia, Canada, France, Switzerland, Portugal, Spain, Malta, Gibraltar, Hong Kong/China, and South Africa.

- S4020— Lloyd's Syndicate 4020 ("Ark") – Ark Corporate Member Limited, Ark Corporate Member (No. 2) Limited and Scor Underwriting Limited, were the corporate members of Lloyd's Syndicate 4020, all of which are incorporated under the laws of England and Wales. Ark has 21.739% interest of the $10,000,000 aggregate policy limit, of Policy No. B0146CYUSA1500542—Cyber Liability Primary Policy effective July 1, 2015-2016.

- S1084—Chaucer, which has a 17.391% interest of the $10,000,000 aggregate policy limit, of Policy No. B0146CYUSA1500542—Cyber Liability Primary Policy effective July 1, 2015-2016. Chaucer's sole member is a citizen of the United Kingdom.

- S1274—is comprised of Antares Underwriting Limited, Treimco Limited and Antares Capital IV Limited, which collectively have a 12.174% interest in the $10,000,000 aggregate policy limit of Policy No. B0146CYUSA1500542—Cyber Liability Primary Policy effective July 1, 2015-2016. Antares Underwriting Limited, Treimco Limited and Antares Capital IV Limited are citizens of the United Kingdom.

- S0609—Atrium, which has a 8.696% interest of the $10,000,000 aggregate policy limit, of Policy No. B0146CYUSA1500542—Cyber Liability Primary Policy effective July 1, 2015-2016. Atrium is a citizen of the United

Kingdom.

7.    Policy No. B0146CYUSA1500543, the first excess policy issued to Sharp by Underwriters, effective July 1, 2015-2016, in the amount of $5,000,000, is underwritten by S2007—AXIS Corporate Capital UK II Limited, formerly known as Novae Corporate Underwriting Limited, the sole corporate member of Syndicate 2007. AXIS is incorporated in the United Kingdom and its registered office is in London. Its managing agent is Enstar Managing Agency Limited, which is incorporated in the United Kingdom with its registered office in London.

8.    Policy No. ESE00132438, the second layer excess policy issued to Sharp by Underwriters, effective July 1, 2015-2016 is underwritten by the following Syndicates:

- S4000—Liberty Corporate Capital (Two) Limited ("LCC2"), has a 22.5% interest in the $10,000,000 limit of insurance under Policy No. ESE00132438. LCC2 is the sole member of S4000, and is incorporated in the United Kingdom.

- S5151—RiverStone Corporate Capital 5 Limited ("RiverStone") has a 15/500% interest in the in the $10,000,000 limit of insurance under Policy No. ESE00132438. RiverStone is incorporated in the United Kingdom.

- 1980—Liberty Corporate Capital Limited ("LCCL") for and on behalf of Syndicate 1980. LCCL has a 14.500% interest in the $10,000,000 limit of insurance under Policy No. ESE00132438. LCCL's registered office is in the United Kingdom. LCCL's ultimate parent company is Liberty Mutual Holding Company, Inc., which is incorporated in and has a principal place of business in Boston, Massachusetts.

- S2003—AXA XL Underwriting Agencies Limited, the sole corporate member for Syndicate 2003 has a 13.5% interest in the $10,000,000 limit of insurance under Policy No. ESE00132438. AXA XL is incorporated in the United Kingdom. AXA XL is owned by AXA SA, a French Corporation.

- S1200—The underwriting members of Syndicate 1200 have 12.5% interest

in the $10,000,000 limit of insurance under Policy No. ESE001324838. S1200 is comprised of 443 members all of which are resident in the United Kingdom.

- S1221—Hartford Corporate Underwriters Limited ("HCUL"), the sole corporate member of Syndicate S1221 has a 9.0 % interest in the $10,000,000 limit of insurance under policy no. ESE00132438. HCUL is registered in England and Wales.

9.      Policy No. B0146CYUSA1500750, the third layer excess policy issued to Sharp by Underwriters, effective July 1, 2015-2016, was underwritten by S1955 which is comprised of the following members:

- S4472—Liberty Corporate Capital Limited ("LCCL") is the sole capital provider for Syndicate 4472. LCCL has a 33.4% interest in the $15,000,000 limit of insurance under Policy No. B0146CYUSA1500750. LCCL's registered office is in the United Kingdom. LCCL's ultimate parent company is Liberty Mutual Holding Company, Inc., which is incorporated in and has a principal place of business in Boston, Massachusetts.

- Barbican Corporate Member Ltd. for and on behalf of Barbican Syndicate 1955, which has a 33.3% interest in the $15,000,000 limit of insurance under Policy No. B0146CYUSA1500750. Barbican is a citizen of the United Kingdom.

- And the following Syndicates, which combined have a 33.3 interest $15,000,000 limit of insurance under Policy No. B0146CYUSA1500750

  o S2001—the sole member of Syndicate 2001 is MS Amlin Corporate Member Limited ("MS Amlin"). MS Amlin is incorporated under the laws of England.

  o S4020— Lloyd's Syndicate 4020 ("Ark") – Ark Corporate Member Limited, Ark Corporate Member (No. 2) Limited and Scor Underwriting Limited, were the corporate members of Lloyd's

Syndicate 4020, all of which are incorporated under the laws of England and Wales.

o S4000—Liberty Corporate Capital (Two) Limited ("LCC2"), LCC2 is the sole member of S4000, and is incorporated in the United Kingdom.

o S435—Faraday Capital Ltd., for and on behalf of Syndicate 435. Faraday Capital Ltd. is incorporated in the United Kingdom.

o ANV Consortium 9209—comprising (i) S1861—ANV Corporate Name Limited ("ANV CNL"), the sole corporate member of Syndicate 1861. ANV CNL is incorporated in the United Kingdom. Its managing agent is Enstar Managing Agency Limited, which is incorporated in the United Kingdom with its registered office in London, and (ii) S5820-ANV Corporate Name Limited ("ANV CNL") is incorporated in the United Kingdom. Its managing agent is Enstar Managing Agency Limited, which is incorporated in the United Kingdom with its registered office in London.

o S1221—Hartford Corporate Underwriters Limited ("HCUL"), the sole corporate member of Syndicate S1221 has a 9.0 % interest in the $10,000,000 limit of insurance under policy no. ESE00132438. HCUL is registered in England and Wales.

10.    Defendant COLUMBIA CASUALTY COMPANY ("Columbia") is an insurance company with a principal place of business in Chicago, Illinois.

11.    Defendant ADMIRAL INSURANCE COMPANY ("Admiral") is an insurance company incorporated in the State of Delaware with its principal place of business in Delaware.

## **GENERAL ALLEGATIONS**

**A.    The Underlying Lawsuits**

12.    Beginning in 2017, and continuing through 2021, Sharp was sued in

eighteen separate lawsuits filed by patients who believed, based upon media reports, that Sharp had intentionally recorded them as they underwent medical procedures as part of its investigation into the disappearance of Propofol, Succinylcholine and Rocuronium from operating rooms at Sharp Grossmont Hospital. These lawsuits were deemed related and were consolidated under *Lincoln v. Sharp Healthcare, et al.*, San Diego Superior Court Case No. 37-2019-00016922-CU-MT-CTL.[1] Collectively, these suits are referred to as "Patient Video Actions." A true and correct copy of the First Amended Complaint filed in the Lincoln Action is attached hereto as **Exhibit A** and incorporated herein by reference.

13.     The Patient Video Actions asserted causes of action against Sharp for Fraudulent Concealment; Breach of Fiduciary Duty, Invasion of Privacy—Intrusion Into Private Affairs, Invasion of Privacy (Cal. Const. Art. 1, §1), Negligence, Negligent Infliction of Emotional Distress, and Unlawful Recording of Confidential Information.

**B.    Insurance Information**

14.     Sharp elected to self-insure through a captive insurer— Continuous Quality Insurance SPC For and On Behalf of Segregated Portfolio A (formerly known as Continuous Quality Insurance Co., LTD) ("CQI") to pay claims asserted against it. A "captive" insurer is a wholly owned subsidiary created to provide insurance to its non-

---

[1] The other lawsuits are: *Jones v. Sharp Healthcare, et al*. SDSC Case No.: 37-2017-00001377-CU-NP-CTL; *Ablahad, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00019406-CU-MT-CTL; *Abramson, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00018492-CU-MT-CTL; *Aguilar, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00020297-CU-MT-CTL; *Allen, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00017747-CU-MT-CTL; *Flowers v. Sharp Healthcare, et al*. SDSC Case No.: 37-2020-00044762-CU-MT-CTL; *Dalrymple v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00023167-CU-PO-CTL; *Inzunza v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00057461-CU-PO-CTL; *Ismaeel, et al. v. Sharp Healthcare, et al*. SDSC Case No. 37-2019-00001780-CU-MT-CTL; *Juarez, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00034209-CU-MT-CTL; *Mean v. Sharp Healthcare, et al*. SDSC Case No.: 37-2020-00033623-CU-MT-CTL; *Mobole, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00025858-CU-MT-CTL; *Recklau v. Sharp Healthcare, et al*. SDSC Case No.: 37-2021-00008603-CU-MT-CTL; *Sniff, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00022855-CU-MT-CTL; *Usher v. Sharp Healthcare, et al*. SDSC Case No.: 37-2018-00017113-CU-PO-CTL; *Vezza, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00025576-CU-NP-CTL; and *Wheeler, et al. v. Sharp Healthcare, et al*. SDSC Case No.: 37-2019-00028744-CU-PO-CTL.

insurance parent.

15.    The CQI program is a form of self-insurance, which, under California law, is equivalent to no insurance. *Aerojet-General Corp. v. Transport Indemnity Co*., 17 Cal.4th 38, 72 (1997); *Legacy Vulcan Corp. v. Superior Court*, 185 Cal.App.4th 677, 696 (2010).

16.    The CQI program provided general liability coverage and professional liability coverage to Sharp for the policy period October 1, 2015 through October 1, 2016.

17.    Sharp purchased a Healthcare Facilities Umbrella Policy from Columbia ("Columbia Policy"). A true and correct copy of the Columbia Policy, No. HMU 4015936906-6, effective October 1, 2015, through October 1, 2016, is attached hereto as **Exhibit B** and incorporated herein by reference.

18.    The Columbia Policy provided coverage in the amount of $25 million Each Claim/Aggregate Limit.

19.    The insuring agreement in the Columbia Policy states:

> **A.    Insuring Agreement**
>
> **Subject** to the section entitled **LIMITS OF INSURANCE**, the Insurer will pay on behalf of an **Insured** those **damages** in excess of the **applicable underlying limit** that an **Insured** becomes legally obligated to pay as a result of a **claim**, including a **professional liability claim**, alleging injury and caused by an **incident.** The Insurer will pay such **damages** only upon exhaustion of the **applicable underlying limit**.

20.    Under heading B., "How this Insurance Applies," the Policy states:

> This insurance applies only as follows.
>
> * * *
>
> **2.    Claims-Made Coverage**
>
> Where the **primary policy** or **self-insured retention** is on a claims-made basis,
>
> **a.**    such claim is first made against any Insured during the policy period or during the extended reporting period, if any, and is reported to the Insurer in accordance with the section entitled

CONDITIONS, the paragraph entitled Notice of Claims and Potential Claims….

* * *

4.      Where there is no **underlying insurance** applicable to a **claim** covered under this policy, this policy applies as primary insurance on a claims made basis pursuant to all other terms and conditions of coverage.

5.      Where the Insurer is the first layer of insurance above a **self-Insured retention**, the **self-Insured retention** shall be subject to all of the terms and conditions of this policy.

6.      The Insurer will also pay for **defense costs** as specified in the section entitled **DEFENSE PAYMENT AND RELATED DUTIES**.

21.    The Columbia Policy includes the following Definitions:

**Administrative services** means planning, organizing, directing and controlling, on the **Insured Entity's** behalf, the medical operations of the **Insured Entity** by or on behalf of an **administrator**. **Administrative services** include services as a member of a **formal review board**.

* * *

**Applicable underlying limit** means the total available Limits of Insurance applicable to any **claim** or all **claims** in the aggregate, as stated in the **underlying insurance** or as provided in any **unscheduled underlying insurance**.

* * *

**Incident**

A.      With respect to **bodily injury** (other than covered **bodily injury** arising out of the rendering of **professional services**) **and property damage, incident means an occurrence.**

B.      With respect to **personal and advertising injury**, **incident** means an offense arising out of its business

C.      With respect to **professional services injury**, **incident** means an act, error or omission in the performance of **professional services**.

* * *

**Insured Entity** means the natural person or entity **Named Insured** and any **subsidiary**.

* * *

**Primary policy** means the policy providing the first layer of insurance applicable to the **claim** issued by an **underlying insurer** in the Schedule of **underlying insurance**. *A self-insured retention is not a primary policy.* [Emphasis added.]

* * *

**Professional liability claim** means a **claim** arising out of **professional services** and alleging **professional services injury**.

**Professional services** means the rendering to others of **healthcare services**, **Good Samaritan services, proctoring services** or **administrative services**.

**Professional services injury** means **bodily injury**, and solely with respect to **administrative services**, other injury, arising out of the rendering of or failure to render **professional services.**

**Self-insured retention** means the amounts listed in the Schedule of underlying insurance as self-insured retentions that the Insured Entity has agreed to pay for all incidents for which the Insured entity is liable. Such self-insured retention will apply:

A.    on either a claims-made basis or occurrence basis; and

B.    with **defense costs** either eroding or not eroding the **self-insured retention** limits, all as indicated on the Schedule of **underlying insurance**. The **self-insured retention** is subject to all other terms and conditions of this policy.

* * *

**Underlying insurance** means the **self-insured retentions** and the policies of insurance listed in the Schedule of **underlying insurance** including renewal or replacement of such insurance which is not more restrictive than those listed in the aforementioned Schedule of **Underlying Insurance**.

**Underlying insurer** means any Insurer providing **unscheduled underlying insurance** or **underlying insurance** (other than a self-insured retention). It does not include any Insurer whose policies were purchased specifically to be in excess of this policy.

**Unscheduled underlying insurance** means insurance policies available to an **Insured** but solely to the extent such policies cover **incidents** covered under this policy (whether such policies are primary, excess, excess-contingent or otherwise) except the policies listed in the Schedule of **underlying insurance**. **Unscheduled underlying insurance** does not

include insurance purchased specifically to be excess of this policy.

22. The Columbia Policy includes the following provision:

**Other Insurance**

This insurance is excess over and will not contribute with any other insurance available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise. This condition does not apply to insurance purchased specifically to apply in excess of this insurance.

23. The Schedule of Underlying Insurance included in the Columbia Policy identified the following insurance:

a. Commercial General Liability, Insured: Not Applicable;

b. Commercial Automobile Insured: Sharp Healthcare, Carrier: National Union Fire Insurance Company, Limits: $1Million Combined Single Limit;

c. Employers' Liability, Insured: Sharp Healthcare, Carrier: ACE American Insurance Company, Limits $1 Million Each Accident, Disease, and Disease—Each Employee;

d. Foreign Liability (International GL and Auto), Insured: Sharp Healthcare, Carrier: Great Northern Insurance Company, Limits: $1 Million Each Professional;

e. Other Liability—Helipad Liability, Insured: Sharp Healthcare, Carrier: Limits: Catlin Insurance Company, $10 Million Each Claim/Occurrence; $20 Million Aggregate;

f. Other Liability—CGL/PL, Insured: ERP-Sharp Healthcare, Murrieta, CA, Carrier: St. Paul Fire & Marine, Limits $2 Million Each Claim/Occurrence, $6 Million Aggregate;

g. Other Liability CGL/PL, Insured: ERP Unlimited ED/OBGYN-Back Up Panel, Carrier: St. Paul Medical Liability Insurance, $1 Million Each Claim/Occurrence, $5 Million Aggregate; and

h. Other Liability, Insured: Sharp Healthcare, Carrier: Continuous Quality Insurance Company (Captive), Limits (blank) or Self-Insured Retention: $3 Million Each Claim; $16 Million Aggregate

24. Underwriters provided cyber liability coverage to Sharp under Policy No.

B0146CYUSA1500542 for the policy period July 1, 2015-2016 ("Cyber Select Policy"). A true and correct copy of the Cyber Select Policy is attached hereto as **Exhibit C** and incorporated herein by reference.

25.     The Cyber Select Policy includes an aggregate Limit of Liability in the amount of $10M for all claims, costs and expenses, subject to a $500,000 retention.

26.     The Cyber Select policy includes the following insuring agreements:

## A.    TECHNOLOGY SOLUTIONS LIABILITY

**Insurers** agree to pay on **Your** behalf any **Damages** including **Costs** which **You** become legally required to pay as a result of a **Claim** brought by a **Third Party** due to an actual or alleged **Technology Wrongful Act** arising from Your provision of **Technology Solutions**.

## B.    MEDIA AND INTELLECTUAL PROPERTY LIABILITY

**Insurers** agree to pay on **Your** behalf any **Damages** including **Costs** which **You** become legally required to pay as a result of a **Claim** due to an actual or alleged **Media or Intellectual Property Wrongful Act** arising from **Your Media Activities**.

## C.    NETWORK SECURITY AND PRIVACY [First and Third Party]

### C.1    Breach of Network Security and Privacy Liability

**Insurers** agree to pay on **Your** behalf any **Damages** including **Costs** which **You** become legally required to pay arising out of **Claims** brought by a **Third Party**, or **Your Employees**, directors or officers resulting from an actual or alleged **Breach of Network Security or Privacy**.

27.     The Cyber Select Policy defines "Breach of Network Security or Privacy" to include:

(1)     Any alleged violation of local, state, federal or foreign law or regulation governing the collection, storage, use, disclosure, disposal of, or transmission of Personally Identifiable Information or

(2)     The actual or suspected theft, loss, failure to protect or the unauthorized disclosure of Personally Identifiable Information or any Third Party's information that is not available to the general public.

28.     The Cyber Select Policy contains the following provisions:

8.     Other Insurance

    a.     This Insurance shall apply in excess of any other valid and collectible insurance available to You, including any self-insured Retention or deductible portion thereof unless such Other Insurance is written only as specific excess insurance over the Limit of Liability of this Policy, or in respect of coverage afforded under Section 111.3 *(Additional Assureds)*

    b.     If the Other Insurance is exhausted or reduced by the payment of **Damages, Costs** or any other amounts potentially insured by this Policy, then this Policy will be excess of the reduced limit of the Other Insurance;

    c.     If any **Claim, Damages, Costs** or any other amounts insured under this Policy are also potentially insured under any Other Insurance policy or policies that **You** have purchased, then **You** must advise Insurers at the time of making a **Claim** under this **Policy** and provide **Insurers** with details of the Other Insurance.

    d.     However, if **Damages, Costs** or any other amounts covered by this Policy are not paid, in whole or in part, by any such Other Insurance for any reason, this Policy shall pay such **Damages Costs** or any other amounts, subject to this Policy's terms, conditions and exclusions, including without limitation under Section Vl.15 *Notification of a* **Claim***)* and/ or Section Vl.13 *(Subrogation),* and will drop down;

       i.     In the place of any Other Insurance which has not paid, and will pay such **Damages, Costs** or any other amounts covered by this Policy on behalf of **You** up to the Limit of Liability as stated in item 4. of the Declarations Page; provided, however, that this Policy will remain excess of the self-insured Retentions or Retentions of any Other Insurance which is held liable to pay such loss and expense covered by this Policy, or

       ii.     To respond as if it were a primary policy in the event such Other Insurance is not held liable to pay such **Damages, Costs** or any other amounts covered by this Policy.

       iii.     It is further understood and agreed that **Insurers** shall recognize the reduction or the exhaustion of the Retention as stated in item 4. of the Declarations Page in the event of

COMPLAINT                 13                 Case No.

the payment of **Damages, Costs** or any other amounts covered by this Policy insurable hereunder by any Other Insurance;

iv.    Notwithstanding the above, the cover afforded under this Policy shall not be subject to any terms and conditions of any of the Other Insurance; . . .

29.    As both the Columbia policy and the Underwriters policy states that their respective policies are excess over any other insurance (other than the self-insured retention), the provisions are mutually repugnant such that both insurers are co-primary. *CSE Ins. Group v. Northbrook Property & Casualty Co.*, 23 Cal.App.4th 1839, 1844-45 (1994).

30.    Policy No, B0146CYUSA1500543, the first excess policy issued by Underwriters to Sharp follows the form of Policy No. B0146CYUSA1500542.

31.    Admiral Insurance Company ("Admiral") issued Policy No. CES-CA-10213-1015-01, Healthcare Facility Follow Form Excess Liability Insurance to Sharp for the policy period October 1, 2015 through October 1, 2016. This Policy provides coverage in the amount of $15M for each Loss Event, and $15M Policy Period Aggregate. A true and correct copy of the Admiral Policy is attached hereto as **Exhibit D** and incorporated herein by reference.

32.    The insuring agreement states that Admiral agrees to indemnify the Insured for Loss covered by the Underlying Insurance. Admiral's indemnification obligation arises: "only after the Underlying Limits of Liability and any applicable Continuing Underlying Amount have been actually paid."

33.    The "Other Insurance" provision in the Admiral Policy states:

**K.    OTHER INSURANCE**

If Other Insurance not afforded by the Company is available to the Insured covering a Loss Event that is also covered by this Policy, the insurance afforded by this Policy will be excess of, and not contribute with, such Other Insurance.

34.    As the first excess policy issued by Underwriters and the excess policy

issued by Admiral state that their respective policies are excess over any other insurance providing coverage for a loss or event, the provisions are mutually repugnant such that Underwriters, under its first excess policy, and Admiral, under its excess policy must contribute to the loss in equal shares before Underwriters are required to issue any payments under ither Policy No. ESE00132438, the second layer excess policy issued by Underwriters to Sharp or Policy No. B0146CYUSA1500750, the third layer excess policy issued by Underwriters to Sharp.

**C.   Tender of Defense And Insurers' Reponses**

35.     Sharp tendered defense of the Patient Video Actions to Columbia and Underwriters.

36.     In its reservation of rights letters issued to Sharp, Columbia acknowledged that the coverage under its Policy was potentially implicated as the lawsuits asserted claims for damages as a result of a "professional services injury" (damages arising out of Sharp's planning, directing and controlling of its operations) and arising out of "personal and advertising injury" (arising out of Sharp's alleged invasion of the Plaintiffs' privacy).

37.     Columbia has taken the position that the coverage afforded by its coverage was excess to the coverage afforded by the Cyber Liability Policy issued by Underwriters. Columbia's position is improper and is not supported by the clear and unequivocal language of the relevant insuring agreements.

38.     Underwriters accepted Sharp's defense under the Cyber Select Policy subject to a full and complete reservation of rights, including their right to pursue claims for equitable contribution against Sharp's other insurers, which would include but is not limited to Columbia.

39.     The Columbia policy provides primary coverage for the claims asserted against Sharp in the Patient Video Actions.

40.     To date, Underwriters have paid $5,230,349.84 in defending the Patient Video Actions and have funded settlements to resolve some of those Actions.

/ / /

41.     Underwriters anticipate incurring additional defense fees and costs and paying additional sums to settle the Patient Video Actions.

42.     On March 18, 2022, Underwriters wrote to Columbia, requesting that it participate in the defense/indemnification of Sharp and reserving all rights they had against Columbia.

43.     Columbia refused.

44.     On March 29, 2022, Underwriters reiterated their position that Columbia was obligated to participate in the defense/indemnification of Sharp and reserved all rights they had against Columbia.

45.     Columbia refused.

46.     On August 4, 2022, Underwriters notified Columbia that subject to Underwriters' continuing reservation of rights, Underwriters issued reimbursement to Sharp in the amount of $1,447,200.04 for covered defense expenses, and that as of that date Underwriters issued $3,422,017.26 in payment of defense fees and costs.

47.     On August 4, 2022, Underwriters notified Columbia that subject to their continuing reservation of rights it would be funding twenty settlements reached by Sharp in the Patient Video Actions pursuant to Cal. Civil Code section 998, a settlement strategy of which Columbia was aware and to which it did not object.

48.     On August 4, 2022, Underwriters demanded that Columbia reimburse them 50% of the amounts paid by Underwriters toward the defense/indemnification of Sharp.

49.     Columbia refused.

50.     Underwriters have continued to demand that Columbia participate in the defense/indemnification of the Patient Video Actions, but Columbia continues to refuse to do so.

### FIRST CAUSE OF ACTION

### Equitable Contribution—Against Columbia

51.     Underwriters repeat and replead each and every allegation contained in

/ / /

paragraphs 1 through 50, as set forth fully herein.

52.    The Columbia Policy provides primary coverage for the claims asserted against Sharp in the Patient Video Actions.

53.    Columbia had an immediate duty to defend, settle and indemnify the claims asserted against Sharp in the Patient Video Actions.

54.    Columbia has refused to participate in the defense, settlement and indemnification of the settlements of the Patient Video Actions.

55.    Because of the conduct of Columbia, Underwriters have been and will be required to pay more than their fair share in defending and indemnifying Sharp against the claims asserted in the Patient Video Actions.

56.    Columbia should be required to reimburse Underwriters for its proportionate share of the amounts paid in defense and indemnity based on applicable equitable considerations.

57.    Underwriters are entitled to equitable contribution against Columbia for the amount of legal fees and costs they have and will continue to incur in defending Sharp against the claims asserted in the Patient Video Actions, or in an amount in accordance with equitable principles and according to proof.

58.    Underwriters are entitled to equitable contribution against Columbia for the amounts Underwriters paid, or that they will pay, to indemnify the settlements entered into to resolve the Patient Video Actions, or in an amount in accordance with equitable principles and according to proof.

## SECOND CAUSE OF ACTION

### Indemnification—Against Columbia

59.    Underwriters repeat and replead each and every allegation contained in paragraphs 1 through 58, as though fully set forth herein.

60.    Columbia failed to defend and indemnify Sharp against the Patient Video Actions.

61.    Columbia has the same duty of indemnification to Underwriters as it did to

Sharp.

62.     Because of the conduct of Columbia, Underwriters have been required to act alone in the defense and indemnification of the claims asserted against Sharp in the Patient Video Actions.

63.     Underwriters are entitled to be indemnified by Columbia for the amount of legal fees and costs Underwriters incurred and will continue to incur in defending Sharp against the claims asserted in the Patient Video Actions, or in an amount in accordance with equitable principles and according to proof.

64.     Underwriters are entitled to be indemnified by Columbia for the amounts Underwriters paid, or will pay, to indemnify the settlements entered into to resolve the Patient Video Actions, or in an amount in accordance with equitable principles and according to proof.

### **THIRD CAUSE OF ACTION**

### **Declaratory Relief—Duty To Defend—Against Columbia**

65.     Underwriters repeat and replead each and every allegation contained in paragraphs 1 through 64, as though fully set forth herein.

66.     A controversy has arisen by and between Underwriters and Columbia in that Underwriters contend Columbia, as a co-primary insurer has an immediate obligation to defend Sharp against the allegations in the Patient Video Action and Columbia disputes this contention.

67.     An actual, present and justifiable controversy has arisen between Underwriters and Columbia in that Underwriters contend the Columbia Policy provides primary coverage for the claims asserted against Sharp in the Patient Video Actions and that a potential for coverage under the Columbia Policy for the claims asserted in the Patient Video Actions exist, and hence, Columbia had and has an immediate duty to defend Sharp under its Policy, and Columbia disputes this contention.

68.     By reason of the foregoing, a declaratory judgment is both proper and necessary so that the respective rights, duties and obligations of the parties herein may be

1  determined.

2  69.    Such declaration is necessary and appropriate because Underwriters have no

3  plain, speedy, or adequate remedy at law, and by reason of such delay, will suffer great

4  and irreparable injury. Such a declaration is appropriate in order that Underwriters and

5  Columbia may ascertain their respective rights and duties under their policies. Such

6  controversy is incapable of resolution without judicial adjudication.

7  ### FOURTH CAUSE OF ACTION

8  **Declaratory Relief—Duty To Indemnify—Against Columbia And Admiral**

9  70.    Underwriters repeat and replead each and every allegation contained in

10  paragraphs 1 through 69, as though fully set forth herein.

11  71.    A controversy has arisen by and between Underwriters and Columbia in that

12  Underwriters contend Columbia, as a co-primary insurer, has an immediate obligation to

13  indemnify Sharp against the allegations in the Patient Video Action and Columbia

14  disputes this contention.

15  72.    An actual, present and justifiable controversy has arisen between

16  Underwriters and Columbia in that Underwriters contend the Columbia Policy provides

17  primary coverage for the claims asserted against Sharp in the Patient Video Actions and

18  the Columbia Policy provides coverage for some or all of the claims asserted in the

19  Patient Video Actions, and hence, Columbia has a duty to indemnify Sharp from and

20  against the claims asserted in the Patient Video Actions under its Policy, and Columbia

21  disputes this contention.

22  73.    A controversy has arisen by and between Underwriters and Admiral in that

23  Underwriters contend Admiral is required to contribute equally to the settlement of the

24  Patient Video Actions with the first layer of excess coverage provided by Underwriters.

25  74.    An actual, present and justifiable controversy has arisen between

26  Underwriters and Admiral in that Underwriters contend that Admiral must contribute to

27  the settlement of the Patient Video Actions in an equal share with the first excess layer

28  of coverage afforded by the Underwriters policy, before Underwriters are required to pay

any sums under the second and third layer excess policies issued by them, and that Admiral disputes this contention.

75.    By reason of the foregoing controversies, declaratory judgment is both proper and necessary so that the respective rights, duties and obligations of Underwriters, Columbia and Admiral may be determined.

76.    Such declaration is necessary and appropriate because Underwriters have no plain, speedy, or adequate remedy at law, and by reason of such delay, will suffer great and irreparable injury. Such a declaration is appropriate in order that Underwriters, Columbia and Admiral may ascertain their respective rights and duties under their policies. Such controversy is incapable of resolution without judicial adjudication.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Underwriters pray for relief as follows:

1.    On the First Cause of Action for Equitable Contribution:

For the proportionate share of the costs of defending and indemnifying Sharp against the claims asserted in the Patient Video Actions based on applicable equitable considerations;

2.    On the Second Cause of Action for Indemnification:

For all costs and expenses of indemnifying the settlements entered into the resolve the Patient Video Actions in an amount of proof at the time of trial or, alternatively, apportionment based on equitable considerations.

3.    On the Third and Fourth Causes of Action for Declaratory Relief:

a.    For a judicial declaration that Columbia had and has an immediate duty to defend Sharp in the Patient Video Actions;

b.    For a judicial declaration that Columbia has an immediate duty to indemnify Sharp for the settlements paid to resolve the Patient Video Actions;

c.    For a judicial declaration that Columbia has a duty to indemnify Underwriters in an equitable amount, the fees and costs Underwriters

has incurred and will incur in defending Sharp in the Patient Video Actions;

    d.    For a judicial declaration that Admiral, as an excess insurer, has a duty to contribute to and indemnify the settlements entered into to resolve the Patient Video Action with Underwriters before any obligations on the part of Underwriters to indemnify the settlements under the second and third excess layer policies issued by Underwriters are triggered.

4.    On all causes of action:

    a.    For prejudgment interest, at a legal rate, according to proof;

    b.    For post-judgment interest, at a legal rate, according to proof;

    c.    For costs of suit;

    d.    For such other and further relief as the Court deems just and proper.

Dated:   November 22, 2023           LEHAVI STARGARDTER, LLP

By:   */s/ GailAnn Y. Stargardter*
       GailAnn Y. Stargardter
       Attorneys for Plaintiff CERTAIN UNDERWRITERS AT LLOYD'S LONDON