'23 CV 2157 AJB DDL

EXHIBIT C

**NOTICE:**

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG .

5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV .

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU

07/11

LSW1147D

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.



EXHIBIT C - PAGE 96

This contract is subject to US state surplus lines requirements. It is the responsibility of the surplus lines broker to affix a surplus lines notice to the contract document before it is provided to the insured. In the event that the surplus lines notice is not affixed to the contract document the insured should contact the surplus lines broker.

*104 12/ 8/18*

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.



BEECHER CARLSON

EXHIBIT C - PAGE 97

# CyberSelect

## Declarations Page

| | | |
|---|---|---|
| **Policy Number:** | | **B0146CYUSA1500542** |

**1.  Type:**                    Cyber Liability Insurance

**2.  Named Insured:**    **SHARP HEALTHCARE**

**Address:**                    8695 Spectrum Centre Boulevard,
                                       San Diego,
                                       California 92123,
                                       United States of America

**State of Incorporation:** California

**3.  Policy Period:**        From:    1st July 2015
                                         To:        1st July 2016

                                         Both dates at 12.01 a.m Local Time at the Address of the Named
                                         Insured

**4.  Limit of Liability:**    **USD 10,000,000**    in the aggregate for the Policy Period for all
                                                                          Claims, costs and expenses.

**5.  Insuring Agreement**

| | | Covered/<br>Not Covered | Sublimit<br>of Liability | Retention |
|---|---|---|---|---|
| A. | Technology Solutions<br>Liability | Covered | USD10,000,000 | USD500,000 |
| B. | Media and Intellectual<br>Property Liability | Covered | USD 10,000,000 | USD 500,000 |
| C. | Network Security and Privacy (First and Third Party) | | | |
| | 1. Breach of Network<br>Security and Privacy Liability | Covered | USD 10,000,000 | USD 500,000 |
| | 2. First Party Expense | Covered* | USD 10,000,000 | USD 500,000 |
| | * (v) Business Interruption | Covered | USD 10,000,000 | |
| | | | Waiting Period: | 6 hours |
| | 3. Cyber Extortion | Covered | USD 10,000,000 | USD 500,000 |



©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER
CARLSON INSURANCE SERVICES, LLC.



**EXHIBIT C - PAGE 98**

**6.   Extensions of Cover**

| | | Covered/ Not Covered | Sublimit of Liability | Retention |
|---|---|---|---|---|
| A. | Pre-Approved Breach Response | Covered | USD 1,000,000 | USD500,000 |
| B. | Theft | Not Covered | Not Covered | Not Covered |
| C. | Contingent Financial Transfer Loss: | Not Covered | Not Covered | Not Covered |

**7.   Other Sub-limits of Liability:**

PCI Fines Sublimit:
(as per Clause V, Definitions,
Costs, sub-section (ii))              Covered          USD 10,000,000      USD 500,000

**8.   Premium:**          **USD 141,600**     (100%) for the period

**9.   Your Business:**     Healthcare Services

**10.  Retroactive Date:**  1st July 2008

**11.  Territory:**         Worldwide

**12.  Cyber Extortion**
      **Mitigation**
      **Threshold:**        **USD 1,000,000  xs  USD500,000**

**13.  Notice of Claim:**   cc – Claims Department, Paragon International Insurance Brokers
                            140 Leadenhall St, London, EC3V 4QT

**14.  Insurers:**          Principia Underwriting on behalf of certain Underwriters at Lloyds, London -
                            100%

**15.  Endorsements:**      As attached

Dated in London:       12th August 2015



©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER
CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

EXHIBIT C - PAGE 99

## ADDITIONAL WORDINGS & CLAUSES

### THE FOLLOWING ENDORSEMENTS ARE IN ADDITION TO AND/OR AMEND THE POLICY. PLEASE READ THEM CAREFULLY.

### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States  or any State in the United States. It is further agreed that service of process in such suit may be made upon FLWA Service Corp., c/o Foley & Lardner LLP, 555 California Street, Suite 1700, San Francisco, California 94104-1520, United States of America, and that any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA 1998 (24/4/86)    Form approved by Lloyd's Underwriters' Non-Marine Association.

### SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of $2 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

N.M.A. 1168

*om 12/8/15*

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER
CARLSON INSURANCE SERVICES, LLC.



**EXHIBIT C - PAGE 100**

## (RE)INSURERS LIABILITY CLAUSE

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07

LMA3333



©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

**EXHIBIT C - PAGE 101**

## AMENDMENT TO CLAUSE V – DEFINITIONS, Claim, sub-section iii

Clause V – DEFINITIONS, Claim, sub-section iii. is amended to read as follows:

iii.      A civil investigative demand, or civil regulatory proceeding brought by an applicable regulatory authority, including card brands and banks enforcing standards for merchants and service providers under the Payment Card Industry Security Standards Council for a Breach of Network Security or Privacy commenced by the service of a letter of complaint, official action or investigation; or

## AMENDMENT TO CLAUSE V – DEFINITIONS, , Costs, sub-section i.

Clause V – DEFINITIONS, Costs, sub-section i. is amended to read as follows:

i.      The Costs arising out of any regulatory investigation by any regulatory authority including card brands and banks enforcing standards for merchants and service providers under the Payment Card Industry Security Standards Council, or card brand directed card reissuance costs, or

## AMENDMENT TO Clause IV – EXCLUSIONS, 9

Clause IV – EXCLUSIONS, 9, is amended to read as follows

9.      Arising out of liability which You have assumed under any express warranty agreement or guarantee assumed in a written or verbal contract. This exclusion shall not apply to (1) the extent that liability would have attached in the absence of such contract; (2) as it relates to the Technology Solutions Liability coverage part I.A; or as it relates to liabilities assumed by virtue of PCI-DSS compliance obligations.

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.



BEECHER CARLSON

EXHIBIT C - PAGE 102





PASSION.

INNOVATION.

ACCOUNTABILITY.

BEECHER CARLSON

# CyberSelect - Policy Wording

*Risk management without passion, innovation and accountability is just buying insurance*

EXHIBIT C - PAGE 103

*CyberSelect - Policy Wording*

## Table of Contents

I.   INSURING AGREEMENTS ................................................................. 3

II.  EXTENSIONS ................................................................................ 4

III. SPECIAL AGREEMENTS ................................................................. 5

IV.  EXCLUSIONS ............................................................................... 6

V.   DEFINITIONS ............................................................................... 9

VI.  GENERAL CONDITIONS .............................................................. 15



27/11/15

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.



EXHIBIT C - PAGE 104

*CyberSelect - Policy Wording*

# CyberSelect - Policy Wording

This Policy is an insurance contract between **You** and **Insurers**.  Please read this Policy carefully, it contains all the details of the coverage provided by **Insurers**. If **You** believe there are any errors, please contact **Your** agent or broker immediately.

**You** have purchased some or all of the Insuring Agreements contained within this Policy as detailed below.  Please refer to item 5. of the Declarations Page, which shows the Insuring Agreement(s) **You** have purchased. Where no coverage limit is shown, that Insuring Agreement has not been purchased, and no coverage will be provided under that Insuring Agreement. For the avoidance of any doubt, any Limit of Liability or Sub-Limit shown in item 5. of the Declarations Page form part of, and are not in addition to the Aggregate Limit of Liability.

The Policy covers **Claims** and expenses, costs and losses detailed in Section I.C.2 (*First Party* Expense) first known and reported which means that in order to be covered, the **Claim** and such expenses, costs and losses must be first known of after the inception date of the Policy and during the Policy Period (or under Section VI.4 a(*Extended Reporting Period*), if applicable) and reported to **Insurers** in accordance with Section VI.12 (*Notification of a **Claim***).



**EXHIBIT C - PAGE 105**

*CyberSelect - Policy Wording*

## INSURING AGREEMENTS

### A. TECHNOLOGY SOLUTIONS LIABILITY

**Insurers** agree to pay on **Your** behalf any **Damages** including **Costs** which **You** become legally required to pay as a result of a **Claim** brought by a **Third Party** due to an actual or alleged **Technology Wrongful Act** arising from **Your** provision of **Technology Solutions**.

### B. MEDIA AND INTELLECTUAL PROPERTY LIABILITY

**Insurers** agree to pay on **Your** behalf any **Damages** including **Costs** which **You** become legally required to pay as a result of a **Claim** due to an actual or alleged **Media or Intellectual Property Wrongful Act** arising from **Your Media Activities**.

### C. NETWORK SECURITY AND PRIVACY [First and Third Party]

#### C.1 Breach of Network Security and Privacy Liability

**Insurers** agree to pay on **Your** behalf any **Damages** including **Costs** which **You** become legally required to pay arising out of **Claims** brought by a **Third Party**, or **Your Employees**, directors or officers resulting from an actual or alleged **Breach of Network Security or Privacy**.

#### C.2 First Party Expense

**Insurers** agree to indemnify **You** subject to **Insurer's** prior consent except as otherwise provided in Section II.A (*Pre-Approved Breach Response*), any:

i. Forensic expense incurred to investigate the cause and scope of a **Breach of Network Security or Privacy**;
ii. **Notification Costs and Crisis Management Expenses** incurred by **You** as a direct result of a **Breach of Network Security or Privacy**;
iii. Expenses incurred by **You** to remediate, replace or restore software and data on **Your Network** that has been damaged or corrupted as a direct result of a **Network Event**, with such payments only being afforded until the software and data have been restored to the level which existed on **Your Network** prior to the loss occurring.
iv. Public relations expenses by **You** for the services of a mutually acceptable public relations consultancy for the purpose of averting or mitigating damage to **Your Brand** resulting from a **Newsworthy Event**.
v. Business Interruption **Loss of Income** and **Increased Operational Costs** during a **Period of Restoration** to **Your Network** that occurs during the Policy Period, caused by a **Network Event**.

BEECHER CARLSON

**EXHIBIT C - PAGE 106**

*CyberSelect - Policy Wording*

C.3  Cyber Extortion

**Insurers** will pay on **Your** behalf any necessary and reasonable expenses incurred up to the amount shown in item 12. of the Declarations Page, in order to mitigate any **Cyber Extortion Demand**. Should money or property need to be paid by **You** for the purposes of terminating a **Cyber Extortion Demand** and/or the relevant threat, such expenses will be paid by Insurers on Your behalf, but will only be incurred with the **Insurer's** prior written consent. A **Cyber Extortion Demand**, plus and/or the relevant threat be first made during the Policy Period.

## II.    EXTENSIONS

A.    Pre-Approved Breach Response

**Insurers** agree that the following Firms are pre-approved for the necessary and reasonable expenses, up to the amount shown in item 6. of the Declarations Page, so that **Insurer** prior consent is granted for the necessary and reasonable expense incurred associated with Section I.C.2.(*First Party Expense*) as outlined below:

i.    Forensic expense incurred to investigate the cause and scope of, or response to a **Network Event**;
ii.    **Notification Costs and Crisis Management Expenses** incurred by **You** as a direct result of a **Breach of Network Security or Privacy**;

Pre-approved law firms:

**Hogan Lovells, LLP**
Harriet Pearson, Partner

**Clyde & Co. LLP**
Christina Terplan, Partner

**Baker Hostetler, LLP**
Ted Kobus, Partner

**Edwards Wildman, LLP**
Mark Schrieber, Partner
Theodore Augustinos, Partner

**EXHIBIT C - PAGE 107**

*CyberSelect - Policy Wording*

Pre-approved IT forensics firms:

**ID Experts**
Jeremy Henley, Insurance Solutions Executive

B.  Theft

Insurers agree to indemnify **You** for the for the loss of **Your Money, Securities or Saleable Goods** due to the unauthorized access to **Your Network** by a **Third Party** or an **Employee**.

C.  Contingent Financial Transfer Loss

**Insurers** will pay on **Your** behalf any loss arising out of a **Covered Claim** where **You** have also had money or any other financial benefit transferred, to a **Third Party** and for which **You** have not received any benefit and cannot recover such money or other financial benefit.

## III.  SPECIAL AGREEMENTS

1.  Continuous Cover

If **You** neglect, through error or oversight only, to report a **Claim** during the period of a previous renewal of this Policy issued to **You** by **Insurers**, then provided that **You** have maintained uninterrupted insurance of the same type with the same **Insurers** since the expiry of that earlier Policy, then the **Claim** may be reported under this Policy and **Insurers** will pay such **Claim** on behalf of **You**, provided that:

i.   The payment will be subject to the applicable Terms and Conditions contained in this current Policy other than Limit of Liability, Retention and individually signed capacity from **Insurers** under the earlier Policy under which the matter should have been reported;
ii.  **Insurers** may reduce the payment entitlement by the monetary equivalent of any prejudice which has been suffered as a result of the delayed notification, such reduction in payment entitlement to be determined solely by Insurers;
iii. **You** are not in breach of VI.9 (*Warranty*); and
iv.  **You** have otherwise complied with all the terms and conditions of this Policy.

2.  Automatic Additional Insureds

It is hereby understood and agreed that upon written request by **You**, Paragon International Insurance Brokers may add **Additional Insureds** to be indemnified under this

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.



BEECHER CARLSON

**EXHIBIT C - PAGE 108**

*CyberSelect - Policy Wording*

Policy, but only in respect of **Damages** and **Costs** that the **Additional Insureds** may incur in respect of the provision of **Your Technology Solutions, Your Media Activities** or any **Breach of Network Security or Privacy affecting Your Network,** as it relates to the foregoing.

Upon request, and at Insurers discretion, this Policy shall act as primary and non-contributory insurance for both **You** and the **Additional Insureds**.

For the avoidance of doubt, this Special Agreement will not cover the direct liability of any **Additional Insureds** unrelated to the provision of **Your Technology Solutions** or **Your Media Activities.**

3.  Automatic Joint Ventures

    The Policy will cover **You** for the provision of **Your Business** as a joint venture partner but only to the extent of **Your** own liability as a joint venture partner.

4.  Court Attendance Costs

    In the event that one of **Your** partners, directors, officers or **Employees** attends court as a witness in connection with a **Covered Claim**, **Costs** shall include the following rates per day for each day court attendance has been required:

    i.   Any partner, director or officer; USD 1,000
    ii.  Any **Employee**; USD 550

    For the purpose of this Insuring Agreement only, the Retention payable by **You** is USD 5,000 each and every loss, and the total aggregate amount payable by **Insurers** under this Special Agreement during the Policy Period is USD 100,000, which is part of and not in addition to the aggregate Limit of Liability under this Policy.

## IV.  EXCLUSIONS

**Insurers** will not make any payment on **Your** behalf or incur any **Costs** for any **Claim** or loss;

1.  Arising out of any actual or alleged act, error, omission, fact or circumstance committed before the Retroactive Date specified in item 10. of the Declarations Page, or any related or continuing acts, errors, omissions, facts or circumstances first committed before the Retroactive Date specified in item 10. of the Declarations Page.

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.





**EXHIBIT C - PAGE 109**

*CyberSelect - Policy Wording*

2.  Arising out of any circumstance(s) which could give rise to a **Claim** under this Policy of which **Your C-Suite** was aware prior to the Inception Date of this Policy as shown in item 3. of the Declarations Page, whether notified under any other insurance or not (notwithstanding Section III.1 (*Continuous Cover*).

3.  Arising out of any deliberate, dishonest, fraudulent or criminal acts by **You** acting with the knowledge or consent of **Your C-Suite**, however this exclusion shall not apply to **Costs** incurred in defending any such Claim or loss alleging the foregoing until such time that there is a final adjudication establishing such conduct, at which time **You** shall reimburse **Insurers** for all such Costs incurred.

4.  For or arising out of any actual antitrust violation, restraint of trade, unfair competition, false, deceptive or unfair trade practices, violation of consumer protection laws or false or deceptive advertising, notwithstanding any coverage available under Section I.B (*Media or Intellectual Property Liability)* or I.C.1 (*Breach of Network Security & Privacy Liability*).

5.  Arising directly or indirectly out of **Bodily Injury** other than in respect of emotional distress and mental anguish therefrom.

6.  Any breach of the following legislation, amendments thereto or any similar international, national, state or local law or any order, ruling or regulation issued pursuant to these laws: US Securities Exchange Act of 1934; US Employee Retirement Income Security Act of 1974; Racketeer Influenced and Corrupt Organizations Act of 1961 except however, that this exclusion shall not apply to coverage provided under Insuring Agreement C.1 (*Breach of Network Security and Privacy*);

7.  Arising from any actual or alleged infringement of any patent.

8.  Arising out of liability which **You** have assumed under any express warranty agreement or guarantee assumed in a written or verbal contract. This exclusion shall not apply to (1) the extent that liability would have attached in the absence of such contract; (2) as it relates to the Technology Solutions Liability coverage part I.A.

9.  Arising out of any pollution, nuclear, radiation or Asbestos related contamination or effects thereon, including electromagnetic radiation, electromagnetic fields and silica.

10. In respect of any **Claim** made by any entity or individual which has an executive or financial interest of greater than 49% in the **Named Insured** or any **Subsidiary**, unless such **Claim** emanates from an independent **Third Party**; or

11. Arising out of or resulting from any of **Your Business** activities as a trustee, partner, officer, director or **Employee** of any **Employee** trust, charitable organization, corporation, company or business other than that of the **Named Insured** or any **Subsidiary**; or

**7 |** Page  ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY
INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

**EXHIBIT C - PAGE 110**

*CyberSelect – Policy Wording*

12. From a product recall, recovery, reprinting, shipping, correction, reprocessing, restoration or repair of any **Technology Solutions** by **You**. For the avoidance of doubt, this exclusion does not prevent a **Claim** for damages being made by a **Third Party**.

13. Arising from war and terrorism, except for where a terrorist event is perpetrated via an electronic or internet based application or means.

14. Arising from any satellite, electrical or other infrastructure service interruptions including but not limited to electrical disturbance, spike or blackout and any outage or disruption of power, utility  services, or telecommunications unless such infrastructure is under **Your** direct control. For the avoidance of doubt, this exclusion will not apply where the proximate cause of such **Claim**, loss or **Costs** arise due to the provision of **Your Technology Solutions**.

15. Arising from any trade or activity which is subject to any applicable economic, political or trade sanction, prohibition or restriction. **Insurers** shall not be deemed to provide cover and nor shall they be liable to pay any **Claim** or provide any benefit hereunder to the extent that the provision of such cover, payment  of such **Claim** or provision of  such benefit would expose that **Insurer** to any applicable economic, political or trade sanction, prohibition or restriction.

16. Arising from any physical damage to **Your Network.** This exclusion will not apply to software and data loss.

17. Arising from any **Property Damage**. This exclusion will not apply to coverage provided under Insuring Agreement I.A. Technology Solutions Liability.

18. For any remediation, replacement or restoration of software or data on **Your Network** to a level beyond that which existed prior to any loss occurring.

19. Made in connection with the Telephone Consumer Protection Act 1991 or CAN-SPAM Act of 2003.

20. Arising out of any fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, or any other natural weather or seismic event.

21. Arising from the use of programs that are not programs, applications, and software where the development stage has been finalized, and are ready for operational use, having passed all test-runs and been proven successful in a live environment, however this exclusion applies only in respect of Section V. (*Definitions)* **Network Event**, v. and vi. being:

    v.   Data loss arising out of damage or destruction of hardware or software, so that **Your** data is not machine readable; or
    vi.  The alteration, copying, corruption, destruction, deletion, or damage to electronic data on **Your Network**; or

BEECHER CARLSON

EXHIBIT C - PAGE 111

*CyberSelect - Policy Wording*

22. Arising out of the inaccurate, inadequate or incomplete description of the price of **Your** goods, products or services, however this exclusion only applies in respect of I. Insuring Agreement B. Media and Intellectual Property Liability.

## V.    DEFINITIONS

**Additional Insured**(s) means those firms and/or their parent companies and/or sister companies and/or **Subsidiary** companies who are indemnified by virtue of Section III.3 (*Automatic Additional Insureds*).

**Bodily Injury** means physical injury, disease or death.

**Breach of Network Security or Privacy** means:

i.   Any alleged violation of local, state, federal or foreign law or regulation governing the collection, storage, use, disclosure, disposal of, or transmission of **Personally Identifiable Information**; or
ii.   The actual or suspected theft, loss, failure to protect or the unauthorized disclosure of **Personally Identifiable Information** or any **Third Party's** information that is not available to the general public,; or,
iii.  A **Network Event**; or
iv.  An intentional, malicious or willful act of any past or present **Employee** that results in the misuse of **Your Network** to modify, delete, corrupt, destroy, or inappropriately disclose data; or
v.   **Operational Error** resulting in the loss, destruction or alteration of **Your** data; or
vi.  The loss of or inaccessibility of **Third Party** data stored on **Your Network** or a **Third Party** service provider to **Your Business**;

**Claim** means:

i.   A written demand for monetary damages or non-monetary relief; or
ii.   A **Cyber Extortion Demand**; or
iii.  A civil investigative demand, or civil regulatory proceeding brought by an applicable regulatory authority including the Payment Card Industry Security Standards Council for a **Breach of Network Security or Privacy** commenced by the service of a letter of complaint, official action or investigation; or
iv.  An arbitration commenced by receipt of a written request, demand or invitation to arbitrate, or similar communication; or
v.   An invitation to enter into alternative dispute resolution, including, where applicable, any appeal therefrom; or
vi.  A **Network Event**; or

 ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

EXHIBIT C - PAGE 112

*CyberSelect – Policy Wording*

vii.  Notification to **Insurers** of the need to incur **Costs** in relation to Section I.C.2 (*First Party Expense*); or

viii. any decision or order of the Federal Trade Commission or any other regulatory body with responsibility for **Your** industry in connection with **Your Media Activities**.

**Costs** means reasonable and necessary fees and expenses incurred in the defense, investigation or settlement of any **Claim**, loss or expense incurred by **You** or on **Your** behalf with the prior written consent (except as otherwise provided in Section II.A (*Pre-Approved Breach Response*)) of **Insurers** arising from a **Technology Wrongful Act, Breach of Network Security or Privacy** or a **Media and Intellectual Property Wrongful Act**, including but not limited to:

i.  The **Costs** arising out of any regulatory investigation by any regulatory authority or the Payment Card Industry Security Standards Council, or card brand directed card reissuance costs, or

ii. Fines, penalties resulting from a **Claim**, where insurable by law. The insurability of fines and penalties will be determined by the venue most favorable to **You**.  **Costs** do not include salaries of **Employees** or other business expenses of **Your Business**. This sub-section shall be subject to the limitations contained within the sub-limit in item 7. of the Declarations Page.

**Covered Claim** means a **Claim** for which **Insurers** have agreed to make a payment for under this Policy.

**C-Suite** means any of the following positions:  **Your** Chief Technology Officer, Chief Operating Officer, Chief Financial Officer, Chief Executive Officer, Chief Risk Officer or Chief Information Officer or functional equivalents.

**Cyber Extortion Demand** means any demand for money, securities, or other tangible or intangible property made by a **Third Party** or **Employee**, threatening to:

i.   Subject **Your Network** to a **Network Event**;
ii.  Release, divulge, disseminate or use the data acquired by unauthorized access to or unauthorized use of **Your Network**;
iii. Electronically communicate under false pretenses, with the intention of obtaining confidential information or **Personally Identifiable Information** in **Your** care; or
iv.  Steal **Your Money, Securities or Saleable Goods** via **Your Network**, or
v.   Destroy, corrupt, steal of otherwise damage **Your Network** or the software and data therein;
vi.  Steal, disclose or  use **Your** confidential information or **Personally Identifiable Information** in **Your** care; or
vii. Deface any of media or entertainment output provided through **Your** website regardless of its nature, form or means of dissemination.

  ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

**EXHIBIT C - PAGE 113**

*CyberSelect - Policy Wording*

**Damages** means monetary judgements, statutory damages, consumer redress fund, award, settlement, or punitive, exemplary damages where insurable by law and subject to the venue most favourable to **You**.

**Documents** means deeds, wills, agreements, maps, plans, books, letters, policies, certificates, forms and **Documents** of any nature, whether printed, written or produced by any method including computer records and electronically stored data used in the course of the **Your Business,** but does not mean money.

**Employee** means any:

i. Individual in **Your** service, including any part-time, seasonal, and temporary workers or any individual who is working on **Your** behalf, or at **Your** direction, and under **Your** direct control;
ii. Agent or independent contractor, including distributors, licensees, and sub-licensees, but only while acting on behalf of, at the direction of, or under the control of the **Named Insured** or any **Subsidiary**; and
iii. Person employed by or supplied by labor-only sub-contractors, self-employed person under the control of the **Named Insured,** or any **Subsidiary**.
iv. **Employee** does not include any of **Your** directors or partners.
v. Estate, heirs, executors, administrators, assigns and legal representatives of any **Employee** in the event of such **Employee's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Employee** would otherwise be provided coverage under this insurance Policy.

**Increased Operational Costs** means reasonable and necessary expenses in excess of **Your** normal operating expenses sustained by **You** during a **Period of Restoration** in order to resume or restore **Your Business** to the same operability as before a **Period of Restoration**.

**Insurers** means those insurers detailed in item 14. of the Declarations Page and any other subscribing **Insurers** hereon.

**Loss of Income** means **Your** net profit before tax that could have been reasonably projected during the **Period of Restoration** but which was lost, taking into account the prior experience of **Your Business** during the previous twelve months immediately prior to the **Period of Restoration** and the likely experience had such **Period of Restoration** not happened.

**Media Activities** means the provision of spoken or written words, imagery and communication by or on behalf of **You** in the ordinary course of **Your Business** (including public engagements), including but not limited to:

 ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

**EXHIBIT C - PAGE 114**

*CyberSelect – Policy Wording*

i.   any form of research, acquisition, development, creation, production, advertising, distribution, dissemination, broadcast, publication, licensing, syndication or sale of **Your Content**; or
ii.  Merchandising.

**Media and Intellectual Property Wrongful Act** means:

i.    Misstatement, misrepresentation or the misuse of information; or
ii.   Any form of defamation, libel, slander, plagiarism, passing off, product disparagement or other tort relating to the disparagement of the emotions, reputation of character of a **Third Party**; or
iii.  An infringement of any form of intellectual property (except patents) and any unfair competition or misleading business practices thereon; or
iv.   The unintentional disclosure of third party trade secrets; or
v.    Any unintentional misrepresentative advertising, or the breach of any advertising regulation or statute; or
vi.   False arrest,  malicious prosecution, abuse of process, false arrest, detention or imprisonment; or
vii.  Improper deep-linking or framing; or
viii. Invasion of privacy including: invasion, intrusion or interference with rights of occupancy, privacy or publicity, including trespass, wrongful entry or eviction, false light, commercial appropriation of name or likeness.

**Money, Securities or Saleable Goods** means cash, currency, bank notes, travellers' checks, registered checks, money orders, credit obligations, negotiable and non-negotiable instruments or financial contracts or obligations, or tangible physical property that has economic value held or distributed by **You** or **Third Parties** acting for **You**.

**Named Insured** mean the legal entity(s) shown in item 2. of the Declarations Page.

**Network Event** means:

i.    Malicious code or a computer virus or any form of malware on **Your Network** including but not limited to web scraping, harvesting and data extraction; or
ii.   Unauthorized access to or unauthorized use of **Your Network** by a **Third Party** or **Employee**; or
iii.  Failure of **Your Network** security practices, including but is not limited to, electronic or non-electronic security failures, failure to protect against anticipated threats or hazards, or physical theft of information or hardware (including mobile devices), false communications or social engineering techniques designed to trick the user into surrendering personal information (commonly known as "phishing" or "pharming");  or
iv.   A denial of service attack to **Your Network** or via **Your Network** to a **Third Party**; or
v.    Data loss arising out of damage or destruction of hardware or software, so that **Your** data is not machine readable; or

**12 |** Page   ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

**EXHIBIT C - PAGE 115**

vi.   The alteration, copying, corruption, destruction, deletion, or damage to electronic data on **Your Network**; or

vii.  Failure of a direct or back-up power supply or under/over voltage but only if such power supply is owned, operated, or controlled by **You** on your premises.

**Newsworthy Event** means an event that has been caused by **Covered Claim** under this Policy that has been publicized through any media channel, including internet, television, print media or radio, or for which **You** or the **Insurer** reasonably believe will result in the foregoing.

**Notification Costs and Crisis Management Expenses** means legal, postage, printing, and advertising (but not Public Relations Expense) and other reasonable and necessary expenses incurred in order to comply with a legal or regulatory requirement of any jurisdiction, to notify and provide customer support and credit monitoring to any individual pursuant to any Data Breach Notification Laws or regulations; or to provide the same notification, customer support and credit monitoring to notify individuals residing in countries, states, or provinces that do not have Data Breach Notification Laws or regulations where such voluntary notification is deemed advisable in the opinion of:

i.   A member of the CyberSelect Vendor Panel for Legal Services, or an **Insurer** approved alternative,

ii.  **Insurers**; as such payment of these voluntary notification expenses will mitigate or avoid a **Claim** for which **Insurers** would have been liable under Section I.C.1 (*Breach of Network Security and Privacy Liability* ) of the Policy.

**Operational Error** means any accidental, unintentional or negligent act, error or omission by **You** or a **Third Party** that provides services to **You** in the operation, administration, or on-going maintenance of **Your Network**:

i.   Resulting in any mechanical or electrical failure attributable to any electrical power interruption, blackout, short circuit, induction or voltage fluctuations under **Your** direct operational control; or

ii.  Resulting in electrostatic build-up or electromagnetic disturbances; or

**Period of Restoration** means the period between the initial interruption to **Your Business** caused by a **Network Event** and either the date that **Your Business** has been restored to its level of operability prior to the **Period of Restoration** commencing, but no later than 12 months after the initial notice of such interruption to **Insurers** by **You**.

**Personally Identifiable Information** means personal information not available to the general public, including but not limited to: individual's names, addresses, telephone numbers, social security numbers, drivers' licenses, national identification numbers, IP addresses, Vehicle

**EXHIBIT C - PAGE 116**

Registration plate numbers, facial prints, fingerprints or handwriting prints, credit card numbers, dates of birth, account relationships, account numbers, account balances, and account histories.

**Property Damage** means loss, or destruction of, or damage to, tangible property and material.

**Subsidiary** means any company which the **Named Insured** controls, directly or indirectly, through:

i.    Holding 50% or more of the voting rights, or
ii.   Having the right to appoint or remove 50% or more of its board of directors; or
iii.  Controlling alone, pursuant to a written agreement with other shareholders or members, 50% or more of the voting rights therein.

**Subsidiary** shall also include any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by **You.**

**Technology Solutions** means the services performed for others by or on behalf of **You** in the ordinary course of **Your** business activities, and also means the provision of any computer and telecommunications products in the ordinary course of **Your Business** including hardware or software developed, created manufactured, sold, leased, licensed, handled, distributed, installed, repaired, serviced, updated, developed or disposed of by **You**, or by others trading under **Your** name, including, but not limited to:

i.    Containers, packaging, labeling, instructions, materials, components, parts or equipment furnished in connection with such goods or products, and;
ii.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use the goods or products; and the providing of or failure to provide warnings or instructions.

**Technology Wrongful Act** means**:**

i.     **Bodily Injury,** but only in the provision of services; or
ii.    **Property Damage,** but only in the provision of services; or
iii.   Any negligent act, error, omission, or negligent misstatement; or
iv.    A breach of a written, verbal, express or implied contract resulting from the failure of **Technology Solutions** to meet the agreed specifications and/or delivery timescale; or
v.     The failure to use reasonable skill and care; or
vi.    A breach of duty, trust, privacy or any form of confidence; or
vii.   **Operational Error**; or
viii.  The fraud and dishonesty of **Employees** or individuals working with **You** or on **Your** behalf; or
ix.    Unintentional breach of license by **You**.

 ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

**EXHIBIT C - PAGE 117**

*CyberSelect - Policy Wording*

**Third Party** means any person or entity who is not **You**.

**You(r)** means:

i. The **Named Insured**,
ii. Any **Subsidiary** of the **Named Insured** but only with respect to **Claims** or loss that occurs while it is a **Subsidiary** and otherwise covered by this policy, and
iii. Any past, present, or future officer, director, trustee, or **Employee** of any party described in i. or ii. , but only while acting within the scope of their duties as such;
iv. In the event that any party described in i. or ii. above is a partnership, limited liability partnership, or limited liability company, then any general or managing partner, principal, stockholder, or owner thereof, but only while acting within the scope of their duties as such;

**Your Brand** means **Your** name, term, design, symbol, or any other feature that identifies **Your Business**.

**Your Business** means those activities undertaken and services provided by **You.**

**Your Content** means any form of media or entertainment output regardless of its nature, form or means of dissemination.

**Your Network** means any information technology system owned or operated by **You** or by a **Third Party** service provider to whom **You** have outsourced the operation of such system.

## VI. GENERAL CONDITIONS

1. Investigation, Defense and Settlement

   a. With respects to Section I.A (*Technology Solutions Liability*), Section I.B (*Media and Intellectual Property Liability*) and Section I.C.1 (*Breach of Network Security and Privacy Liability*), if purchased, **Insurers** shall have the duty to defend any **Claim** brought by a **Third Party** against **You** even if any of the allegations of the **Claim** are groundless, false or fraudulent, subject to the Limits of Liability, exclusions and other terms and conditions of this Policy.

   b. Except as otherwise provided in Section II.A (*Pre-Approved Breach Response*), **You** shall seek **Insurers'** consent prior to the appointment of defense counsel; such consent will not be unreasonably withheld.

 ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

EXHIBIT C - PAGE 118

c.  In the event that **You** refuse to consent to a settlement or compromise recommended by **Insurers** and acceptable to the **Claimant** and elect to contest the **Claim**, **Insurers'** liability for any **Claims** and **Costs** shall not exceed:

   i.  The amount for which the **Claim** could have been settled, less the remaining Retention, plus **Costs** incurred up to the time of such refusal, and

   ii.  Fifty percent (50%) of any **Damages** or **Costs** incurred after the date such settlement or compromise was recommended to **You**. The remaining Fifty (50%) of any **Damages** or **Costs**, or other amounts covered under this policy are **Your** responsibility and uninsured under this Policy.

d.  Except as otherwise provided below and as otherwise provided in Section II.A (*Pre-Approved Breach Response*), **You** will not, without the prior written consent of **Insurers**, admit liability, compromise, settle, or make any offer or payment in respect of any **Claim** or any circumstance which may give rise to a **Claim** except as **You** may be required to do so by any applicable law or regulation.  **You** shall have the right, at **Your** sole discretion and without **Insurers'** prior consent, to:

   i.  Settle any **Claim** where the total amount of **Damages** and **Claims** expenses does not exceed 50% of the Retention; or

   ii.  Coverage provided under Section VI.16 (*What to do in the event of a Breach of Network Security or Privacy*) in connection with a Pre-Approved Breach Responder.

e.  However, nothing contained in the forgoing shall relieve **You** of **Your** obligation to provide notice of every **Claim** to us in accordance with Section VI.15 (*Notification of a Claim*) and Section VI.16 (*What to do in the event of a Breach of Network Security or Privacy*) herein or to assist and co-operate with the **Insurers**.

f.  **Insurers** will not be obliged to investigate, defend or settle any **Claim** after the Aggregate Limit of Liability has been exhausted by payment of **Damages** or **Costs** or any combination thereof.

g.  **You** will give all such assistance as **Insurers** may reasonably require in relation to the investigation, settlement or defense of any **Claim** made under this Policy.

2.  Limit of Liability and Retention

a.  The Aggregate Limit of Liability shall be **Insurers'** total limit under this Policy regardless of the number of Insuring Agreements or **Claims** that apply, including **Costs** where applicable.  All payments made under the Policy, regardless of the number of Insuring Agreements shall reduce the Aggregate Limit of Liability. **Insurers** shall be liable under this Policy, including in respect of **Costs**, only in excess of any applicable Retention and Waiting Period as listed in item 5. of the Declarations Page. The Retention and Waiting

**EXHIBIT C - PAGE 119**

*CyberSelect - Policy Wording*

Period shall apply to each and every **Claim**, irrespective of the number of such **Claims**, during the Policy Period.

b. In the event a **Claim** triggers coverage under more than one Insuring Agreement, then only the highest applicable Retention and Waiting Period shall apply.

c. With respect Section I.C.2.v (*First Party Expense*) the Waiting Period listed in item 5. of the Declarations Page shall apply and be eroded from, the commencement of the **Period of Restoration.** Insurers shall only be liable for **Loss of Income** and **Increased Operational Costs** incurred after the Waiting Period has expired. No Retention shall apply to this.

d. All **Claims** arising out of the same event without regard to the number of **Claims**, or **Claimants** shall be considered a single **Claim**. All such **Claims** shall be deemed to have been made at the time of the first such **Claim**.

e. Any other amounts covered by this Policy shall be applied against the Limit of Liability for the Extended Reporting Period, if applicable, shall be part of and not in addition to the Limit of Liability for the Policy Period.

3. Mergers & Acquisitions

If during the Policy Period, **You** acquire any entity whose annual revenues for their last completed financial year are less than 15% of **Your** total annual revenues in **Your** last completed financial year, such entity will be automatically added as a **Subsidiary** insured under this Policy, with no additional premium charged, but only for any **Claims** that arise from a **Breach of Network Security, Technology** or **Media and Intellectual Property Wrongful Act** first occurring after the entity becomes so owned.

If during the Policy Period, **You** acquire any entity whose annual revenues for their last completed financial year are more than 15% of **Your** total annual revenues for **Your** last completed financial year then coverage under this Policy shall be afforded for a period of 90 days commencing from the date of formal acquisition by **You** but only for any **Claims** that arise from **Breach of Network Security, Technology** or **Media and Intellectual Property Wrongful Act** first occurring after the entity becomes so owned.

Coverage beyond this 90 day period, including for past activity, before the entity becomes so owned shall only be made available after written request by **You**, and subject to **Insurers'** discretion.

BEECHER CARLSON

**EXHIBIT C - PAGE 120**

4. Extended Reporting Period

   a. If **Insurers** cancel or do not renew the Policy and provided that **You** are not entitled to similar coverage under any other insurance, upon written request made to **Insurers** no later than 10 days from the expiry of the Policy Period, **Insurers** will provide an automatic non-cancellable Extended Reporting Period of 60 days starting at the expiry of the Policy Period for no additional premium.

   b. If **You** cancel or do not renew the Policy for any reason **You** are entitled, upon payment in full and not proportionally of the amount set out in i. below, within 30 days of cancellation or non-renewal, to have issued an Endorsement providing an Extended Reporting Period for **Claims** provided that any actual or alleged **Breach of Network Security, Technology** or **Media and Intellectual Property Wrongful Acts** or occurrences happened prior to the end of the Policy Period and are otherwise covered by this Policy and reported to **Insurers** during the Extended Reporting Period.

      i.   12 months at 100 % of the annual premium hereunder

      Any subsequent extended periods under this provision will be annually agreeable at the pre-agreed rates below:

      ii.  24 months at 175 % of the annual premium hereunder
      iii. 36 months at 215 % of the annual premium hereunder

   c. The entire premium shall be deemed fully earned at the commencement of an Extended Reporting Period.

   d. The Limit of Liability for an Extended Reporting Period shall be part of, and not in addition to, the Aggregate Limit of Liability.  In no event shall the granting of the Extended Reporting Period be construed as the issuing of a new Policy or reinstate or increase **Insurers'** Limit of Liability, including **Costs**, as shown in item  4. of the Declarations Page.

5. Cancellation

   a. This Policy may be cancelled by the **Named Insured**, on behalf of all entities and individuals insured hereunder, by surrender thereof to **Insurers** or by mailing or delivering to written notice stating when the cancellation shall be effective to **Insurers** via Paragon International Insurance Brokers at the following address: Executive Risks Team, Paragon International Insurance Brokers, Second Floor, 140 Leadenhall Street, London EC3V 4QT.

   b. If the Policy is cancelled before any **Claims** are notified under this Policy, the **Named Insured** shall be entitled to a refund of Premium pro rata to the time on risk. The

 ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

**EXHIBIT C - PAGE 121**

premium shall be deemed fully earned if there are any **Covered Claims** notified under this Policy on or before the cancellation.

c. It is understood and agreed that **Insurers** may cancel this Insurance because **You** have failed to pay the premium when due or in the instance of fraud on **Your** behalf.  In the event that **Insurers** cancel the Policy for non-payment of premium, **Insurers** must provide a written notice of cancellation to the **Named Insured** stating when, not less than thirty (30) days thereafter, such cancellation shall be effective.

d. In the event that **Insurers** cancel the Policy in connection with non-compliance with Section VI.9 (*Utmost Good Faith*), this Policy will be void ab initio and **You** shall have no rights to bring any other **Claims** under this Policy.

6. Territory

   Unless otherwise established in item 11. of the Declarations Page, cover granted by this Policy shall apply to **Claims** made or loss incurred anywhere in the world.

7. Governing Law & Exclusive Jurisdiction

   This Policy shall be interpreted under, governed by and construed in all respects in accordance with the law of the jurisdiction of the place of incorporation of the **Named Insured** (as shown in item 2. of the Declarations Page) and for this purpose, the **Insurers** and **You** agree to submit to the exclusive jurisdiction of the courts within such territorial limits and jurisdiction.

8. Other Insurance

   a. This Insurance shall apply in excess of any other valid and collectible insurance available to **You**, including any self-insured Retention or deductible portion thereof unless such Other Insurance is written only as specific excess insurance over the Limit of Liability of this Policy, or in respect of coverage afforded under Section III.3 (*Additional Assureds*)

   b. If the Other Insurance is exhausted or reduced by the payment of **Damages, Costs** or any other amounts potentially insured by this Policy, then this Policy will be excess of the reduced limit of the Other Insurance;

   c. If any **Claim, Damages, Costs** or any other amounts insured under this Policy are also potentially insured under any Other Insurance policy or policies that **You** have purchased, then **You** must advise **Insurers** at the time of making a **Claim** under this Policy and provide **Insurers** with details of the Other Insurance.

   d. However, if **Damages, Costs** or any other amounts covered by this Policy are not paid, in whole or in part, by any such Other Insurance for any reason, this Policy shall pay such



©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.




BEECHER CARLSON

**EXHIBIT C - PAGE 122**

**Damages Costs** or any other amounts, subject to this Policy's terms, conditions and exclusions, including without limitation under Section VI.15 (*Notification of a Claim*) and/or Section VI.13 (*Subrogation*), and will drop down;

i.    In the place of any Other Insurance which has not paid, and will pay such **Damages, Costs** or any other amounts covered by this Policy on behalf of **You** up to the Limit of Liability as stated in item 4. of the Declarations Page; provided, however, that this Policy will remain excess of the self-insured Retentions or Retentions of any Other Insurance which is held liable to pay such loss and expense covered by this Policy, or

ii.   To respond as if it were a primary policy in the event such Other Insurance is not held liable to pay such **Damages, Costs** or any other amounts covered by this Policy.

iii.  It is further understood and agreed that **Insurers** shall recognize the reduction or the exhaustion of the Retention as stated in item 4. of the Declarations Page in the event of the payment of **Damages, Costs** or any other amounts covered by this Policy insurable hereunder by any Other Insurance;

iv.   Notwithstanding the above, the cover afforded under this Policy shall not be subject to any terms and conditions of any of the Other Insurance;

9.  Utmost Good Faith

    a.  Application: Disclosure

    The **C-Suite** agrees that the statements contained in the information provided to **Insurers** in connection with the placement of this Policy, are their agreements and representations, which shall be deemed material to the risk assumed by **Insurers**, and that this Policy is issued in reliance upon the truth thereof.

    In the event of any material misrepresentation or non-disclosure or knowledge thereof of any matter by the **C-Suite** on behalf of **You** in the information provided to **Insurers** in connection with the placement of this Policy, the Policy will be rendered null and void and **Insurers** will be relieved from all liability under this Policy.

    The Proposal is deemed incorporated into and made a part of this Policy.

    b.  Fraudulent Claims

    If **You** make any **Claim** knowing that **Claim** to be false or fraudulent in any way, **Insurers** shall have no responsibility to make any payments in respect of such **Claim**.

 ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

EXHIBIT C - PAGE 123

*CyberSelect – Policy Wording*

10. Premium Payment Warranty.

   a. **You** undertake that the premium will be paid in full to **Insurers** within 60 days of the Inception Date (or if incepted retrospectively, this 60 day period will be extended to represent 60 days from the date of instruction).

   b. If the premium due under this Policy has not been paid to **Insurers** by the 60th day after the Inception Date (or if incepted retrospectively, this 60 day period will be extended to represent 60 days from the date of instruction) then **Insurers** shall have the right to cancel this Policy by providing **You** with 30 days prior notice of cancellation in writing via **Your** broker.

   c. If the premium is paid in full to **Insurers** before the notice period expires, notice of cancellation shall be revoked. If not, the Policy shall automatically terminate at the end of the notice period.

   d. In the event of cancellation, the premium is due on a pro rata basis for the period that the Policy was in force. In the event that any **Claims**, loss or circumstances that may lead to a **Claim** is notified to **Insurers** during the period prior to actual cancellation then premium is due in full.

   e. If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

   f. Where the premium is to be paid through a London Market Bureau, payment to **Insurers** will be deemed to occur on the day of delivery of a premium advice note to the London Market Bureau.

11. Subrogation

   **You** shall at the request and at the expense of the **Insurer** do and concur in doing and permit to be done all such acts and things as may be necessary or reasonably required by the **Insurer** for the purpose of enforcing any rights and remedies or of obtaining relief or indemnity from other parties to which the **Insurer** shall be or would become entitled or subrogated upon its paying for or making good any loss under this Policy and shall do nothing to prejudice those rights. In the case of recovery after payment of any loss by the **Insurer**, the amount recovered, after deducting the **Insurer's'** costs incurred in obtaining or making such recovery, shall be applied in the following order:

   a. Firstly to reimburse the **Insurers** for any amount paid under this Policy in respect of such **Damages, Costs** or any other amounts covered by this Policy ;

   b. Any balance to **You**.

©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.

BEECHER CARLSON

EXHIBIT C - PAGE 124

*CyberSelect - Policy Wording*

12. Notification of a Claim

It is a condition precedent to cover under this Policy that **You** shall notify **Insurers** in writing as soon as practicable, and in any event within 60 days, after the **C-Suite** discovers or is made aware of any (a) **Claim**, (b) or circumstance that may reasonably be expected to form the basis of a **Claim** or (c) information from which it may be reasonably concluded that any other loss that would be insured under this Policy is occurring, has occurred, or may occur. Notwithstanding the foregoing, the reporting of such matter shall be made during the Policy Period, or Extended Reporting Period if applicable.

   a. **You** shall upon further request from **Insurers**, provide as soon as practicable all correspondence received from the **Claimant** in relation to the **Claim**, including any letter of **Claim**, Claim form, application notice, summons, subpoena or other court document.
   b. **You** must provide **Insurers** all the information and assistance that **Insurers** reasonably request and co-operate with **Insurers** in the investigation or settlement of any Claim.

   c. Notice under this Section shall be treated as having been made to **Insurers** on the date received at the address of the lead insurer shown in item 14. of the Declarations Page, with a copy to be sent via post and e-mail to Paragon International Insurance Brokers at the following:

      i.  Postal address: Head of Claims, Paragon International Insurance Brokers, Second Floor, 140 Leadenhall Street, London EC3V 4QT.
      ii. E-mail address: claims@paragonbrokers.com

   d. Contact with the Pre-Approved Breach Response Adviser does not constitute Notification hereunder.

**22** | Page  ©BEECHER CARLSON INSURANCE SERVICES, LLC. ALL RIGHTS RESERVED. THIS DOCUMENT CONTAINS CONFIDENTIAL AND PROPRIETARY INFORMATION OF BEECHER CARLSON INSURANCE SERVICES, LLC.



BEECHER CARLSON

**EXHIBIT C - PAGE 125**